J-A12010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.S., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3433 EDA 2017 |

Appeal from the Dispositional Order September 22, 2017
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-1000155-2016

BEFORE:  BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                **FILED AUGUST 15, 2018**

A.S. appeals from the dispositional order following her admission to an act that would qualify as simple assault if committed by an adult, asserting that the court abused its discretion in directing out-of-home placement.  We affirm.

The underlying matter occurred on April 14, 2016, when police were dispatched to Wordsworth Academy in Montgomery County, where A.S. was a student.  A.S. was alleged to be "out of control" and screaming profanities.  While being escorted back to her classroom, A.S. continued to scream and made stabbing gestures.  Once brought back to class, A.S. stabbed a staff member in the back with a pencil.  On October 6, 2016, a Montgomery County judge adjudicated her delinquent as stated, and transferred the proceeding to Philadelphia County for disposition due to A.S.'s residency there.

On December 8, 2016, A.S. was placed on probation and a disposition review hearing was scheduled for February of 2017, which was continued due to the unavailability of A.S.'s mother, as she was in the hospital for surgery. An order was issued keeping A.S. on probation pending a further review hearing on April 25, 2017, which was also postponed.

On June 27, 2017, a review hearing was held and Appellant was ordered for placement. The unnamed[1] probation officer ("PO") informed the court at the beginning of the hearing that since the last listing on April 25, A.S. had been absent from school without an excuse thirty-seven times, and late twelve times. He recommended individual therapy; however, the juvenile judge asked questions about the notes submitted to the court, which indicated a contrary course:

THE COURT: Okay. So what are you suggesting now?

PROBATION OFFICER: Starting her on individual therapy—

THE COURT: Well, why doesn't any of that appear in your notes? Why do your notes say that she needs to be held? Your notes say that the mother no longer wishes to allow her to remain in the house.

PROBATION OFFICER: Yes.

THE COURT: Your notes say that you've been to the house and noticed her disrespectful behavior.

---

[1] At an August 17, 2017, hearing the probation officer stated, "Probation Officer Bowler for P.O. Bryant Lennon." We will assume that PO Lennon was the officer present at the other hearings and therefore use the designation "he."

PROBATION OFFICER: Yes.

THE COURT: Your notes say that she refuses to show up for urine screens, and your notes say she's completely out of control.

PROBATION OFFICER: Yes.

THE COURT: Okay.

PROBATION OFFICER: And speaking with her lawyer to see if we could come up with a possible plan for her rather than possibly her being held.

THE COURT: Well, is the lawyer taking her home?

PROBATION OFFICER: No.

THE COURT: Okay. Well, then if the mother tells you she's not welcome home, how do you do that?

N.T., 6/27/17, at 4-5.

The PO did not respond as Appellant's counsel interjected at that point. Counsel requested services with home placement, arguing "I think there are services that we haven't tried . . . that should be tried before going straight to holding her." *Id*. at 7. The judge replied, "I'm not going straight to holding her. This is like [the] fourth time she's been in my courtroom. . . . She's had multiple cases. I've been supervising her for almost a year now. You don't get supervised five or six times and then come in and break every rule." *Id*. The judge ordered that Appellant be held at the Juvenile Justice Services Center, and also ordered a behavioral examination and the preparation of a placement plan. A.S.'s mother was not present at the hearing.

At this juncture, we note that the court had some prior history with A.S. as she had, in October 2015, admitted in Philadelphia County to simple assault and conspiracy before the Honorable Abram Reynolds, who adjudicated her delinquent and ordered probation. Judge Reynolds subsequently retired and the juvenile judge apparently assumed control of the case, as A.S. appeared in his courtroom on October 17, 2016.[2]

We now set forth the subsequent history regarding Appellant's placement. On July 14, 2017, a hearing was held wherein the PO informed the juvenile court that Summit Academy rejected Appellant due to her history and assaultive behavior, while Abraxas did not have any open spots. The PO noted that the behavioral health examination ("BHE") report prepared by the psychiatrist recommended providing community-based services. The PO informed the court that Appellant had "never been on any other services, she's pretty much just been on probation, she never went through individual therapy[.]" N.T., 7/14/17, at 4. The judge disagreed, saying, "you need to read the report. She's been under mental health supervision for years, DHS has a list this long, she's been placed[.]" *Id*. The PO responded that he was

_____

[2] The October 17, 2016 hearing does not appear in the certified record. However, the juvenile court's Pa.R.A.P. 1925(a) opinion relates that the court was advised A.S. had not committed any new offenses, which was inaccurate since the current incident in Montgomery County preceded that hearing.

referring only to "the delinquent side" and did not consider any prior DHS interaction.[3]

The juvenile court then asked the PO if he was aware that Appellant was on the judge's probation in 2015, "and she didn't get off of that until October of 2016. And then she almost immediately picked up this case." The PO conceded that he was unaware of the prior case, and the court then asked the Commonwealth for its input. The assistant district attorney asked for the probation office to "continue to plan. I can't agree to send her home today, two violent offenses, she hasn't been in school, there's 37 unexcused absences, all her grades are Ds and Fs. I would defer to Your Honor as to where to go from here." *Id*. at 5-6. Appellant's counsel argued that Appellant was being held solely "for disrespecting Mom," but the judge disagreed, noting "a laundry list" of issues. *Id*. at 6. The court concluded the hearing by saying, "Give it another ten days. Find a place for her to go." *Id*. at 10.

That follow-up hearing was held on July 31, 2017. The PO stated he had initiated referrals to two facilities as potential placements, which did not come to fruition for various reasons. The PO reiterated that home-based services with GPS restrictions remained an option instead of placement. The juvenile judge rejected that proposal and continued the matter for another ten days.

---

[3] The later BHE report states that A.S. was removed from her mother's home at age six; "A.S. alludes to a friend who reported the mother to DHS." BHE, 7/11/17, at unnumbered 5. The report further states that A.S. was placed in seven foster homes from the ages of six to thirteen.

The parties appeared again on August 17, 2017. Probation Officer Bowler informed the court that placement had yet to occur, but indicated that Appellant was on a waiting list for a facility that may or may not have accepted her. Services at home were again mentioned, and Appellant's mother implored the court to let A.S. go home. The judge stated that Appellant had several chances, and, due to the lack of any firm plan, he committed Appellant to MAYS Western PA Child Care.

Appellant filed a motion to reconsider placement, with a hearing held on September 22, 2017. Consistent with its earlier position, the Commonwealth recommended no change. "She had 37 unexcused absences and Mom was fed up with her behavior. And that's why the P.O. was recommending to plan for placement. So I believe it would be in her best interest to remain[.]" N.T., 9/22/17, at 6. At the hearing, Appellant indicated that she was the target of a potential assault in the facility, and her mother stated that Appellant was afraid of being sexually assaulted. Due to safety concerns, the juvenile judge discharged Appellant from MAYS and placed her with the Department of Public Welfare. This timely appeal followed, and Appellant raises the following issue for our review:

> The lower court abused its discretion and violated the purposes of the juvenile act by committing appellant, A.S., a juvenile, to secure placement with the state when that was not the least restrictive intervention needed to rehabilitate, supervise, and treat her

Appellant's brief at 3.

Our standard of review of dispositional orders in juvenile proceedings is well-settled. The Juvenile Act grants juvenile courts broad discretion when determining an appropriate disposition. *In re C.A.G.,* 89 A.3d 704, 709 (Pa.Super. 2014). We therefore may not overturn a juvenile court's decision unless that discretion was manifestly abused. *In re R.D.,* 44 A.3d 657, 664 (Pa.Super. 2012). The governing statute states:

> **(a) Short title.--**This chapter shall be known and may be cited as the "Juvenile Act."
>
> **(b) Purposes.--**This chapter shall be interpreted and construed as to effectuate the following purposes:
>
>> (1) To preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained.
>>
>> (1.1) To provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of this chapter.
>>
>> (2) Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.
>>
>> (3) To achieve the foregoing purposes in a family environment whenever possible, separating the child from parents only when necessary for his welfare, safety or health or in the interests of public safety, by doing all of the following:

(i) employing evidence-based practices whenever possible and, in the case of a delinquent child, by using the least restrictive intervention that is consistent with the protection of the community, the imposition of accountability for offenses committed and the rehabilitation, supervision and treatment needs of the child; and

(ii) imposing confinement only if necessary and for the minimum amount of time that is consistent with the purposes under paragraphs (1), (1.1) and (2).

(4) To provide means through which the provisions of this chapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.

42 Pa.C.S. § 6301.

Preliminarily, we note that the sole issue on appeal is the juvenile court's decision to reject in-home placement. Our standard of review of that decision is for an abuse of discretion, as this Court set forth in **Commonwealth v. K.M.-F.**, 117 A.3d 346 (Pa.Super. 2015) (*per curiam*). Therein, we considered a petition for review of out-of-home placement pursuant to Pa.R.A.P. 1770, which permits a juvenile to petition this Court for review of an order placing a juvenile in an out-of-home overnight placement. Like Appellant, the juvenile therein asserted that the court abused its discretion "by ordering out-of-home placement because the decision was against the weight of the evidence presented at the hearing." **Id**. at 350. We applied an abuse of discretion

standard to the placement decision. *Id*. Our decision noted that the weight to be assigned to testimony of the witnesses was within the exclusive province of the judge as fact-finder. *Id*. at 351. We concluded:

> The record demonstrates that the court heard testimony from a number of witnesses on behalf of the victim and Petitioner, and that it considered the recommendations of probation and counsel. The juvenile court noted that it had read the relevant statutes and that it took its responsibilities under the Juvenile Act seriously as it weighed its duties to hold Petitioner accountable, protect society, and rehabilitate Petitioner. We cannot find that the juvenile court abused its discretion in fashioning Petitioner's disposition and out-of-home placement under the circumstances of this case was not unreasonable.

*Id*. at 352.

With those principles in mind, we now examine Appellant's claim. As a prefatory matter, we note that Appellant largely treats the three separate placement decisions together. As we have set forth, the juvenile court initially placed Appellant on June 27, 2017, which we view as the first placement decision. That placement involved directions to the probation office to find a suitable facility. Those efforts, as we have further related, failed for various reasons, culminating in the decision to place Appellant in MAYS, which we view as the second decision. Finally, Appellant was later sent to another facility following the motion to reconsider, which is the third placement decision.

Appellant briefly suggests that the juvenile court erred with respect to the particular facility chosen, which implicates the second and third placement decisions. Appellant's brief at 18 ("The statute **only** authorizes courts to commit a juvenile to an institution that is 'best suited to the child's treatment,

supervision, rehabilitation, and welfare.'") (emphasis in original). However, her primary argument is that the initial out-of-home placement constituted an abuse of discretion.

> The lower court initially ordered A.S. taken into custody and ordered the parties to plan for placement, at least in part, because her mother told the probation officer that she wanted A.S. placed. This information was revealed at a court hearing soon after A.S.'s mother had heart surgery and could not attend court. At every subsequent court hearing, A.S.'s mother was present and asking for A.S. to be returned home with supportive services in place. The probation officer and the doctor who evaluated A.S. recommended exactly that solution. The lower court, however, consistently refused to consider community based services or engage in a meaningful conversation about what intervention was best suited to meet A.S.'s needs.

> . . . .

> Many less restrictive interventions for this child were presented to the lower court, and all were refused without serious consideration.

Appellant's brief at 20-21. We therefore focus on that aspect of the decision. *See K.M.-F.*, *supra* at 351 ("Petitioner additionally challenges placement in Abraxas or Summit Academy. However, his objection does not specifically relate to either placement so much as his belief that probation with conditions is all that is warranted."); *id*. at 352 n.11 (noting that under Rule 1770(c)(1) an objection to a specific institution is not permitted to be challenged in a petition for review).

We now turn to Appellant's specific explanations for why this Court should find that the juvenile court abused its discretion. First, A.S. emphasizes that her probation officer, her mother, and the psychiatrist who

wrote the BHE report all recommended that the court release A.S. to home for treatment in the community. Appellant acknowledges that her mother told the probation officer that she wanted A.S. placed, but draws our attention to the fact that her mother later testified that she changed her mind on that point. Second, Appellant asserts that her Montgomery County treatment was positive, and that her behavior started to deteriorate in response to life events when she was back in Philadelphia County. Third, while Appellant did miss a drug test, she had previously tested negative. Taken together, Appellant maintains that placement was an abuse of discretion, as the Juvenile Act expresses a clear desire for preserving the family environment and separation from parents may be done "only when necessary[.]" 42 Pa.C.S. § 6301(b)(3).

Turning to the Commonwealth's position, it does not oppose Appellant's request for a new dispositional hearing. However, the Commonwealth's concession does not account for the applicable law, and its analysis studiously avoids opining that the juvenile court abused its discretion. After setting forth the governing law and the abuse of discretion standard, its brief concludes:

> Defendant's probation officer and counsel recommended GPS monitoring until defendant could be placed on home-based services. While the lower court cited the BHE in imposing placement, the recommendations of the physician-evaluator in that BHE were for home-based services. Given these circumstances, it is not clear on the record that the dispositional order pursued the least restrictive intervention possible consistent with the protection of the community, the imposition of accountability for offenses committed and, most importantly, the rehabilitation, supervision, and treatment needs of defendant. Accordingly, the Commonwealth does not oppose a remand for a new dispositional hearing.

- 11 -

Commonwealth's brief at 17.[4]

The fact that the Commonwealth does not oppose relief is not, however, equivalent to the necessary concession that the juvenile court abused its discretion. The closest the Commonwealth comes on that point is "it is not clear on the record that the dispositional order pursued the least restrictive intervention[.]" *Id*. However, the "least restrictive intervention" standard is necessarily amorphous. Logically, placement can never be "the least restrictive" standard unless there is literally no other place for the juvenile to go; our abuse of discretion standard permits the juvenile judge to consider any relevant factor in making that decision. The Commonwealth's claim that "it is not clear" whether the judge's decision constituted an abuse of discretion in effect means there was no abuse of discretion, insofar as such abuses should be plainly identifiable.

Furthermore, with respect to the Commonwealth's concession, we note that the Commonwealth advocated at both the June 27, 2017 hearing and the motion for reconsideration hearing that Appellant remain in placement. The Commonwealth is, of course, free to change its position; unfortunately, it offers no explanation for that decision. While we place great weight on its input in this and all other matters, our standard of review requires this Court

_____

[4] It is correct that the juvenile judge referenced the BHE at the motion to reconsider; however, the judge was discussing the **content** of that report and Appellant's history, not the psychiatrist's **conclusion**. Additionally, we note that the BHE postdates the initial decision to place Appellant out-of-home.

to affirm in the absence of an abuse of discretion, and the Commonwealth's acquiescence to relief is not equivalent to that.

Having set forth the parties' position, we now quote the juvenile court's rationale as set forth in its Pa.R.A.P. 1925(a) opinion.

> At the dispositional hearings, reviews and the hearing on Defendant's Motion to Reconsider Placement, this Court considered the reports and recommendations of the Probation Department, the requests of the Defendant's mother and the psychological and psychiatric evaluation, all of which satisfied the due process requirements of 42 Pa.C.S.A. § 6301(b)(4). In particular, the following should be noted:
>
> On June 27, 2017, this Court was advised by the Probation Officer that the Defendant was enrolled in the 11th Grade at Delaware Valley Charter High School and since the last court date of April 25, 2017, the Defendant had acquired 37 unexcused absences and 12 [notices of tardiness]. Defendant's grades were Ds and Fs. The Court was further advised that Defendant had been very disrespectful to her mother, including cursing at her, Defendant did not follow the mother's rules and curfew and on occasion had stayed outside the home overnight on multiple occasions, and she had not complied with the Probation Department's rules. Defendant's mother advised that her daughter was "out of control" and there was nothing more that the mother could do. This Court instructed the Probation Department to plan for placement and a [psychiatric evaluation] was ordered.
>
> . . . .
>
> The Defendant was already on probation with Judge Reynolds for a prior matter when she admitted to the charge of Simple Assault, (M-2) 18 Pa.C.S.A. § 2701(a)(1) and adjudicated delinquent by Judge Nicholas.
>
> Under Section 6352 of the Juvenile Act, upon a finding that a child is delinquent, the trial court has a number of possibilities for disposition with the proviso that the juvenile's disposition is consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare,

- 13 -

which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community. 42 Pa.C.S.A. § 6352(a).

This Court has specifically provided the Probation Department an opportunity to place Defendant. Unfortunately, the Defendant was unable to be placed in an appropriate treatment facility. Defendant was afforded a proper dispositional hearing and the Defendant's commitment was not unduly harsh. This Court had a lengthy dispositional hearing process as evidenced by the five (5) hearing transcripts. At the dispositional hearings, the Court heard testimony from Petitioner as well as her Probation Officer, her therapist via report, and her mother. The Court heard recommendations from the Probation Officer, and arguments from the Commonwealth, and defense counsel. Most importantly, it should be noted that the Defendant's mother told the Probation Office and Court that she could not supervise or control her daughter. During the hearings, the Court carefully balanced the Defendant's rehabilitative needs against its duties to hold Defendant accountable and protect the community. Accordingly, this Court felt that placement was in Defendant's best interest.

Opinion, 1/11/18, at 8-11.

After careful review of the certified record, we conclude that the juvenile court did not abuse its discretion. We find that the strongest point in Appellant's favor is that the probation officer and psychiatrist both recommended treatment at home. With respect to the probation officer, it is clear that the juvenile judge considered his entreaties but ultimately rejected them. The juvenile judge is not required to adopt wholesale the PO's recommendations; moreover, the PO conceded that his opinion was not fully informed, as he admitted to the juvenile judge that he was unaware of

Appellant's prior juvenile system experiences and did not consider her entire history.

More significantly, the PO candidly admitted that he simultaneously recommended placement due to Appellant's mother stating placement was needed yet continued to suggest home-based services. The judge quite reasonably wished to know how those two positions would work in practice. N.T., 6/27/17, at 5 ("Well, then if the mother tells you she's not welcome home, how do you do that?"). Understandably, the PO wanted to keep A.S. with her mother instead of being placed. However, it was ultimately the judge's responsibility to ensure that home treatment was feasible, and we cannot fault the juvenile court for requiring something more than optimism in the face of A.S.'s mother telling the PO that placement was needed.

Appellant maintains that this fact must be removed from the equation because her mother changed her mind. However, we believe the discretion given to the juvenile court encompasses deciding what weight to give to that factor, and the judge adequately explained why he rejected A.S.'s mother's willingness to provide for Appellant at home:

> THE COURT: Here's the deal, Mom told me at the last hearing that we should plan for placement which is what I'm doing. So the child was held, she was in custody. Mom said, look, you need to plan for placement, this behavior is out of control.
>
> [COUNSEL]: And today she is saying, I am willing to take her home.
>
> THE COURT: And that would be great if she had the services in place, that we might be able to let her go home or if we had any

information that the home is actually safe or if we had any information that the home had gas or if there was any information that she had a seat in a school that she could go to or if there was any information that she had a doctor's office and a name that I knew she would go. However, I don't have any of that, all I have is, don't worry about it, we'll take care of it. Well, she's been under my supervision for two and a half years, they have never taken care of it.

[COUNSEL]: She was doing well for a period of time, she was doing well on therapy, not necessarily needed, but they are now, and so we're trying to get them set up.

THE COURT: I don't know what to tell you, you know you're not allowed to miss 37 days of school. You're her lawyer, why didn't you go and have your education lawyer meet with her after she missed three days of school? Why didn't Mom call you up and say, look, I'm having a problem? Why do you think she's not showing up for drug tests?

[COUNSEL]: I don't know.

N.T., 7/14/17, at 7-9. The juvenile court therefore entertained the possibility but rejected it in light of other factors, primarily the lack of any change in circumstances. Furthermore, we note that at the reconsideration hearing Appellant's counsel stated that A.S.'s mother denied telling the PO that she wanted Appellant placed.

THE COURT: This [placement] wasn't done in the dark. This was done at the request of the mother.

[COUNSEL]: Initially, on June 22nd.

THE COURT: I don't care whether it was initially or not. The fact of the matter was that the mother requested that the child be held and that the probation officer plan for placement.

[COUNSEL]: She's denied that to me repeatedly, but I understand that that is what was said to the probation officer, per the notes.

- 16 -

THE COURT: Would that be correct?

PROBATION OFFICER: Yes, that's what was said. So that is what I followed.

N.T., 9/22/17, at 12-13.

Finally, we believe that the school absences were a permissible factor to consider in determining whether Appellant's mother's willingness to accept Appellant was a viable option. It is clear to this Court that the judge did not start with a presumption that placement was needed, as Appellant was initially placed on probation and was living at home following transfer from Montgomery County. In a sixty-day period between a status hearing and the scheduled dispositional hearing, Appellant missed thirty-seven days of school, and was late for a dozen more. In conjunction with Appellant's own mother informing court personnel that the home environment was unsuitable, we cannot find that the juvenile court abused its discretion by placing more weight on empirical evidence in the place of optimism.

That said, we do not doubt the sincerity of Appellant's mother, and we do not take lightly the separation of a mother and her child. Appellant's mother plainly loves A.S., and her desire to keep the family intact is the primary goal of the Juvenile Act. Yet A.S.'s mother informed the probation officer that A.S. was uncontrollable during the time period immediately

relevant to the disposition.[5] Her desire to take Appellant back into the home is completely understandable once A.S. was removed, but the juvenile judge was required to determine if that plan was feasible and "consistent with the protection of the community, the imposition of accountability for offenses committed and the rehabilitation, supervision and treatment needs of the child[.]" 42 Pa.C.S. § 6301(b)(3)(i). To the extent the motion for reconsideration on this point is part of our review, the absence of any change in circumstances compels our conclusion that the judge did not abuse his discretion.

Disposition affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/18

---

[5] A.S.'s mother later told the probation officers that she made the comment in order to teach A.S. that her actions had consequences, which the officer credited. We view the acceptance or rejection of that explanation as falling within what weight to give the explanation as a matter of credibility, which is exclusively reserved to the fact-finder.